HALL, Judge.
Plaintiff sued defendant for damages for personal injuries sustained by him when he slipped and fell while walking on the sidewalk in front of defendant’s premises located at 810 Dumaine Street in the City of New Orleans, breaking his right ankle. Plaintiff alleged in substance that the proximate cause of the accident was defendant’s negligent failure to keep the sidewalk in front of his premises in a safe condition and more particularly his negligence in putting a slippery substance on the sidewalk and/or permitting it to remain there. Defendant answered denying the allegations of plaintiff’s petition and specifically pleading that neither he nor anyone for whom he was responsible performed any act which in any manner caused or contributed to plaintiff’s alleged fall. Alternatively defendant plead contributory negligence on the part of plaintiff in failing to observe where he was walking.
Following trial on the merits the District Judge rendered judgment in favor of defendant, dismissing plaintiff’s suit at his cost. Plaintiff appealed.
In his written “Reasons for Judgment" the Trial Judge stated that he “was impressed” with the testimony of defendant and his wife and their maid (the only witnesses produced by defendant) and that in his opinion plaintiff had not proved his case by a preponderance of the evidence.
Plaintiff’s sole specification of error is that the Trial Judge erred in accepting the testimony of defendant’s witnesses instead of the testimony of the “disinterested witnesses” produced by plaintiff.
The issues are purely factual and the only question presented is whether the Trial Judge committed manifest error in his evaluation of the testimony.
The record reveals the following:
Defendant owned the premises 810 Du-maine Street where he resided. He also owned the adjoining property bearing the municipal numbers 818-22 Dumaine Street.
On December S, 1962, about dusk plaintiff was walking with Miss Carol McDonald in the 800 block of Dumaine Street. He slipped and fell in the middle of an inclined driveway which crosses the sidewalk between 810 and 818 Dumaine Street and serves the latter premises. Plaintiff landed in the gutter. Miss McDonald called a cab and plaintiff was taken to an orthopedist who found that plaintiff had suffered a comminuted fracture of the lateral malleosis of the right ankle and general bruises and contusions.
Plaintiff testified that some soapy substance on the sidewalk is what caused him to slip and that the sidewalk was wet, but said he had not noticed the condition of the sidewalk until after he had pulled himself up out of the gutter. His theory of the case is that the sidewalk had been washed either with soap or some detergent. He testified that one day in April following the ac *79 cident a Miss Mainord came to his office and they walked past the scene of the accident and observed some white man washing the sidewalk. He testified that on that occasion they saw a box of soap on the sidewalk. He also testified that subsequently on several occasions he had seen a maid washing the sidewalk.
Miss Mainord testified that in December 1962 she lived in the French Quarter across the street from defendant and that she had seen defendant and also his maid, Selma Taylor, frequently wash down the sidewalk; that Selma Taylor and her husband lived in the premises 818 Dumaine Street, owned by defendant. Miss Mainord corroborated plaintiff’s testimony about having taken him to observe defendant washing the sidewalk with soap. This witness became quite confused on cross-examination and it was finally stipulated by plaintiff’s counsel that Miss Mainord had not lived in the French Quarter during the last six months of 1962 and at no time during the year 1963. (The record also shows that Selma Taylor did not move into the premises 818 Dumaine Street until May of 1964; that this house had been vacant since 1961.)
Erick Trumback, a friend of plaintiff’s, testified that sometime in 1963 he had seen someone washing the sidewalk with a detergent and had to cross the street in order to avoid the suds left on the banquette.
None of plaintiff’s witnesses testified to having seen the sidewalk being washed the day of the accident or at anytime whatever previous thereto. Their testimony relates to instances long after the accident and is not convincing even on that score.
Defendant testified that he frequently hosed down the sidewalk on week-ends; that he never used soap or any detergent; that he never hosed the sidewalk on weekdays (the accident happened on a Wednesday) since he got home from work too late; that he could not have washed the sidewalk on the day of the accident because that was a week-day. Defendant’s wife testified that she worked at her husband’s office and that they came home together in the evening; that her husband never washed the sidewalk on week-days; that he went to bed directly after eating dinner. She admitted that she herself had occasionally hosed down the sidewalk on week-days, but that she never used soap or detergent. She was positive that she had not hosed the sidewalk on the day of the accident because she had no maid that day and she was busy preparing for a wedding in the family which was to take place the following Saturday (December 8th).
Selma Taylor, defendant’s maid and only employee, did not come to work on the day of the accident, having remained at home to attend to the catering for the wedding. She testified that at that time she was living at 225 North Roman Street and did not go to defendant’s residence at any time during the day of the accident. She further testified that she did not move to 818 Du-maine Street until May of 1964; that those premises had been vacant for five years before she moved there. She further testified that she had never washed the sidewalk in front of either of defendant’s buildings until coming to live at 818 Dumaine Street in 1964, and that she never used soap.
The record reveals that there is a wash-ateria on the corner about one-half block from where plaintiff fell. Double driveway doors in the rear of this washateria open onto Dumaine Street about sixty feet from defendant’s premises and soapy water from the washateria frequently flows from underneath these doors down the washateria driveway and into the gutter, from whence it flows into a catch basin in front of defendant’s premises. Defendant testified that the gutter was frequently full of soapy water but he had never seen it flow on the sidewalk. Plaintiff, himself, who lives in the neighborhood, admits having seen this soapy water flow from underneath the washateria on many occasions, and admits that when he fell into the gutter the gutter had soapy water in it which got all over his clothes. His companion, Miss *80 McDonald, also testified to this effect. Perhaps in falling some of this soapy water was splashed onto the driveway giving it the bubbly appearance noticed by plaintiff when he arose from the gutter. However speculation on this point is useless.
We are of the opinion that the Trial Judge correctly evaluated the testimony, and that he was correct in holding that plaintiff failed to prove his case.
For the foregoing reasons the judgment appealed from is affirmed, costs of this appeal to be borne by plaintiff-appellant.
Affirmed.